DECISION
{¶ 1} Relator, Carole L. Romeo, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order, which denied relator's application for permanent *Page 2 
total disability compensation, and ordering the commission to find that she is entitled to that compensation.
 {¶ 2} The court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) No objections to that decision have been filed.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Writ of mandamus denied.
 SADLER, P.J., and KLATT, J., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION Rendered on February 15, 2007. IN MANDAMUS {¶ 4} Relator, Carole L. Romeo, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio *Page 4 
("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to that compensation.
Findings of Fact: {¶ 5} 1. Relator sustained a work-related injury on June 15, 1996, and her claim has been allowed for the following conditions:
 * * * SPRAIN OF NECK; SPRAIN THORACIC REGION; SPRAIN LUMBAR REGION; SPONDYLOSIS RESULTING IN CENTRAL CANAL STENOSIS C5-C6, C6-C7; HERNIATED DISC L4-L5, L5-S1; AGGRAVATION OF PREEXISTING DEGENERATIVE DISC DISEASE OF THE CERVICAL SPINE.
 {¶ 6} 2. Relator has not worked since the date of injury.
 {¶ 7} 3. Relator has had two surgeries. The first was a C5-C6 and C6-C7 diskectomy in May 2002, and the second was an L3-L4 and L4-L5 laminectomy in May 2004.
 {¶ 8} 4. Following a hearing held on September 21, 2005 before a staff hearing officer ("SHO"), it was determined that relator's allowed conditions had reached maximum medical improvement ("MMI").
 {¶ 9} 5. In November 2005, relator filed a motion seeking PTD compensation. On her application, relator indicated that she had completed the eighth grade and did not receive a GED. Relator further indicated that she did not have any special trade or vocational school training. In response to whether she could read, write and perform basic math, relator indicated that she could, but not well. Relator further indicated that *Page 5 
she uses a cane to walk. At the time that she filed her application, relator was 52 years old and had four years of work experience as a nurse's aide at a nursing home.
 {¶ 10} 6. Relator submitted the October 25, 2005 report of Richard L. Catterlin, D.O., in support of her application. Dr. Catterlin stated in that report:
 This letter is to inform you that I do believe this patient to be of maximum medical improvement. She is no longer making progress with physical therapy and her range of motion has not improved beyond 50-75%.
 In conclusion, I do believe Carole should be considered for permanent and total disability and removed from the job market.
 {¶ 11} 7. Relator was also examined by Jess G. Bond, M.D., on January 23, 2006. After providing his physical findings upon examination, Dr. Bond opined that relator's allowed conditions had reached MMI, that she had a 24 percent whole person impairment, and that she could perform work at the sedentary level.
 {¶ 12} 8. Relator had a vocational report prepared by Daniel Simone, M.Ed., CRC, CDMS, dated February 24, 2006. Mr. Simone determined that relator was unable to return to either of her former positions of employment, either as a nurse's aide or a cleaner. Further, he stated that relator did not have any skills which would transfer into other occupations and that, based upon her age and limited education, she would not be considered a realistic candidate for additional education or vocational training. Further, he noted that her prolonged absence from the workforce would provide a significant barrier to her ability to successfully return to alternate employment. He concluded that relator was unable to perform substantial gainful employment. *Page 6 
 {¶ 13} 9. The matter was heard before an SHO on May 2, 2006, and resulted in an order denying relator's request for PTD compensation. First, the SHO relied upon the medical report of Dr. Bond and concluded that relator was capable of performing at a sedentary work level. Thereafter, the SHO considered the nonmedical disability factors. The SHO concluded that, at age 59, relator was a person of middle age. The SHO found this to be a positive factor and noted that relator would have approximately six years remaining in the workforce. With regard to relator's education, the SHO concluded that although she did not graduate from high school, her education provided her with the necessary skills to perform basic entry-level work. Therefore, the SHO concluded that relator's education was a neutral factor. With regard to relator's work history, the SHO noted that she had four years experience in a semi-skilled work position. The SHO noted further that although her prior work experience did not provide her with transferable skills, she had benefited from on-the-job training with regard to that job and that she could be retrained to perform other occupations. As such, the SHO concluded that relator's work history was also a neutral factor. In conclusion, the SHO found that relator was not entitled to PTD compensation as follows:
 The Staff Hearing Officer finds that the injured worker's age is a positive factor and that the injured worker can perform or can be retrained to perform other occupations based upon this factor and that the injured worker's education and work experience do not impact the injured worker's potential for re-employment. The Staff Hearing Officer concludes that the injured worker's non-medical disability factors as a whole favor re-employment.
 Therefore, based upon the report of Dr. Bond, which indicated that the injured worker can perform sedentary work, and the overall positive analysis of the injured worker's *Page 7 
non-medical disability factors, the Staff Hearing Officer finds that the injured worker is capable of performing sustained remunerative employment and is not permanently and totally disabled.
 {¶ 14} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 15} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 16} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors.State *Page 8 ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 17} In this mandamus action, relator does not challenge the commission's decision to rely upon the medical report of Dr. Bond. Upon independent review of that report, the magistrate finds that the report of Dr. Bond does constitute "some evidence" upon which the commission could rely in finding that relator was capable of performing at a sedentary work level.
 {¶ 18} Relator's sole challenge in this mandamus action is based upon the fact that the commission did not rely upon the report of Mr. Simone. As relator states, the commission chose to ignore the only vocational evidence in the record and, instead, the commission reached its own decision which was not based on any evidence. For the reasons that follow, the magistrate finds that relator's argument lacks merit.
 {¶ 19} Pursuant to State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, the commission has the discretion to accept one vocational report while rejecting another vocational report and, the commission can reject all vocational reports in the record and conduct its own analysis of the nonmedical factors. To bind the commission to a rehabilitation report's conclusions, would make the rehabilitation division, and not the commission, the ultimate evaluator of disability, contrary to Stephenson. See State ex rel. Singleton v. Indus. Comm.
(1994), 71 Ohio St.3d 117. *Page 9 
 {¶ 20} In the present case, the commission conducted its own analysis of the nonmedical disability factors, which the commission has the authority to do. Further, because the commission is not required to explain why it rejects any evidence, including vocational evidence, the commission was not required to explain why the vocational report of Mr. Simone was not accepted as persuasive. The fact that the commission did not address Mr. Simone's report is not evidence that the commission failed to examine or even consider his report at all.
 {¶ 21} Further, the magistrate concludes that, although brief, the commission's analysis of the nonmedical disability factors was sufficient under the law. With regard to her age, the commission found it to be a positive factor. Although relator contends that her age is obviously a negative factor, the Supreme Court of Ohio has held on several occasions that there is not an age, ever, at which reemployment is held to be a virtual impossibility as a matter of law. State ex rel.Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373; State ex rel.DeZarn v. Indus. Comm. (1996), 74 Ohio St.3d 461; State ex rel. Bryantv. Indus. Comm. (1996), 74 Ohio St.3d 458; and State ex rel. Moss v.Indus. Comm. (1996), 75 Ohio St.3d 414. With respect to her education, the commission ultimately determined that it was a neutral factor. In spite of her eighth grade education, relator had secured a semi-skilled position as a nurse's aide. The commission did not abuse its discretion in finding her education to be a neutral factor. Lastly, the commission found that relator's work as a nurse's aide was also neutral factor. Overall, the commission found relator capable of performing some sustained remunerative employment at a sedentary level and which was entry-level. The commission's decision and analysis was not an abuse of discretion. *Page 10 
 {¶ 22} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and relator's request for a writ of mandamus should be denied. *Page 1